557 F.2d 988
 38 Fair Empl.Prac.Cas. 1722, 14 Empl. Prac.
Dec. P 7663
David Lloyd FOREMAN, Movant-Appellant,
v.
WOOD, WIRE AND METAL LATHERS INTERNATIONAL UNION, LOCAL NO.
46, the Joint Apprenticeship Committee of the Employing
Metallic Furring and Lathing Association of New York and
Local No. 46 of the Wood, Wire and Metal Lathers
International Union, Defendants-Appellees.
 No. 1129, Docket 77-6013.
 United States Court of Appeals,
Second Circuit.
 Argued May 26, 1977.
Decided June 23, 1977.
 
 Gerald J. Dunbar, New York City (Employment Law Clinical Program, Washington Square Legal Services, Inc., David A. Raff, New York City, of counsel), for movant-appellant.
 Walter M. Colleran, New York City (Doran, Colleran, O'Hara, Pollio & Dunne, P. C., New York City, of counsel), for defendants-appellees.
 Before FEINBERG and DANAHER,* Circuit Judges, and DOOLING, District Judge.**
 FEINBERG, Circuit Judge:
 
 
 1
 In 1968, the United States charged Local 46 of the Wood, Wire and Metal Lathers International Union with discriminatory practices in both union membership and job referrals in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[1] In early 1970, the United States and Local 46 entered into a settlement agreement, which was then approved by the United States District Court for the Southern District of New York. See United States v. Wood, Wire & Metal Lathers International Union, Local No. 46, 328 F.Supp. 429 (S.D.N.Y.1971). Among the most significant provisions of the settlement agreement was one calling for the appointment of an Administrator who would have broad powers "to take all actions . . . as he deems necessary to implement the provisions of this Agreement, to ensure the performance of this Agreement and to remedy any breach thereof." Id. at 433. The agreement also provided that "(a)ll decisions of the Administrator . . . shall be final." Id.[2] The court appointed George Moskowitz, an experienced labor lawyer and arbitrator, as the Administrator. Since then, the Administrator has heard complaints of several non-whites who alleged that they were laid off improperly. In the case now before us, appellant David Lloyd Foreman challenges a decision by the Administrator granting him damages in an amount equal to four weeks wages against Local 46. That decision was affirmed by the United States District Court for the Southern District of New York, Marvin E. Frankel, J., and Foreman now appeals, claiming that he is entitled to a greater measure of damages. For the reasons set forth below, we affirm the decision of the district court.
 
 
 2
 * Appellant is a member of a non-white minority group who was a Local 46 permit holder.[3] During 1974, he was employed by Perini Associates at a construction site in Manhattan. Perini discharged him from this job in December 1974, and Foreman then sought a hearing before the Administrator on whether his termination violated the Hiring Hall Rules, which were developed by the Administrator as part of the settlement agreement and approved by the court. See United States v. Wood, Wire & Metal Lathers International Union, Local No. 46, 341 F.Supp. 694 (S.D.N.Y.1972), aff'd, 471 F.2d 408 (2d Cir.), cert. denied, 412 U.S. 939, 93 S.Ct. 2773, 37 L.Ed.2d 398 (1973). Foreman claimed that his layoff violated Hiring Hall Rule VII, which is reproduced in the margin,[4] because there was not sufficient "cause" for his termination. After a hearing, the Administrator ruled that Local 46 had violated Rule VII by failing "to consciously and conscientiously attempt to seek employer's review and reassessment of Foreman's job performance and to suggest or recommend some measure of corrective action short of termination." In reaching this interpretation of the Union's obligation under Rule VII, the Administrator pointed out that the employer's decision to discharge Foreman was not before him, since the employer was not a party to the settlement agreement. Nor could the Union be held directly responsible for Foreman's layoff, since there was no provision in the collective bargaining agreement requiring that discharge by the employer be based on good cause or allowing Union review of the propriety of layoffs. However, for its failure to "aggressively" investigate the discharge, the Administrator ordered the Union to pay Foreman "as damages, a sum equal to the average of four (4) weeks wages." This measure of damages was selected because testimony at the hearing indicated that the job Foreman was performing at the construction site would have continued only for another month.
 
 
 3
 Both the Union and Foreman sought reconsideration of the Administrator's decision. Foreman's request was granted, and a second hearing was held, this time limited to the issue whether four weeks back pay was a sufficient award of damages. Foreman contended that he should receive damages equal to wages lost from the date of his layoff to the date of his reinstatement, whenever that occurs. The Administrator issued a decision reaffirming the four weeks back pay award, and the district court affirmed that ruling.
 
 II
 
 4
 Foreman's position in this court is that the Administrator's ruling on damages is governed by Title VII and that damages equal to four weeks back pay are insufficient under the principles set forth in Albemarle v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).[5] This argument is as, Judge Frankel indicated in his opinion below, based on a fundamental misconception of "both the issues before the Administrator and the corresponding premises of his ruling." Appellant has argued this appeal as though his grievance with the Union were being litigated as an action brought under Title VII. This is not so. While it is true that the case has its origins in a Title VII action, there has been an intervening settlement agreement. In the prior appeal dealing with this settlement agreement, Wood, Wire & Metal Lathers, supra, 471 F.2d 408, the Union claimed that Title VII precluded the implementation of certain of the Administrator's recommendations. We rejected that argument:
 
 
 5
 Clearly, the recommendations were within the scope of the (settlement) agreement. Having agreed to be bound by changes suggested in the report, either consented to or approved by the court, Local 46 cannot now raise § 2000e-2(j) as a bar to the study's implementation.
 
 
 6
 Id. at 413; see also Rios v. Enterprise Ass'n Steamfitters Local, 501 F.2d 622, 628-29 n.4 (2d Cir. 1974), and id. at 637-38 (Hays, J., dissenting). Thus, under our decision in Wood, Wire & Metal Lathers, the settlement agreement in this case may supersede particular requirements of Title VII. Although Foreman is not a party to that agreement, he is suing under its terms, as is evident from the fact that the Administrator found liability under the agreement's Hiring Hall Rules, even though Title VII itself does not (absent a showing of discrimination) prohibit the discharge of employees without good cause. In short, Foreman's suit rests entirely on the provisions of the settlement agreement, and his reliance on specific provisions of Title VII is misplaced.
 
 
 7
 This is not to say that Title VII is irrelevant in reviewing the Administrator's decision. For as Wood, Wire & Metal Lathers also indicates, the Administrator's rulings must not "do violence" to the general intent of Title VII. 471 F.2d at 413. But the Administrator's ruling in this case clearly adheres to that principle. The award of "back pay," even in an action brought directly under Title VII, "is not an automatic or mandatory remedy; like all other remedies under the Act, it is one which the courts 'may' invoke." Albemarle v. Moody, supra, 422 U.S. at 415, 95 S.Ct. at 2370. Here, the damages assessed against Local 46 were not based on a finding that the Union had discriminatorily caused Foreman's discharge, but on a finding that it had not fulfilled its obligation to investigate the discharge. And the Administrator found that even such inquiry "if expeditiously made would not necessarily have assured Foreman of reinstatement or continued employment." Moreover, Local 46 was not Foreman's employer and could not compel Perini Associates to continue him on the payroll. Thus, the Act's general policy "that, given a finding of unlawful discrimination," back pay should be awarded to provide ". . . the most complete relief possible," id. at 421, 95 S.Ct. at 2373, has not been ignored or overridden. Furthermore, the Administrator's decision did not bar Foreman from suing his employer under Title VII for full back pay.
 
 
 8
 In short, we find no merit in appellant's claim that the Administrator's decision erroneously limited his damages under Title VII. The Administrator developed a full record below on the issue of damages, and his opinion was clearly "within the scope of the agreement." Under these circumstances, we are inclined to agree with Local 46 that our scope of review is similar to that applied to an arbitrator's decision. See United States Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Indeed, there are many parallels between the Administrator under this settlement agreement and an arbitrator.[6] However, we need not decide whether the standard of review is, in all respects, the same. For even if, as appellant insists, the policies underlying Title VII, cf. Alexander v. Gardner-Denver, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), require more exacting federal review, we would still affirm the careful decision of the Administrator in this case.[7]
 
 III
 
 9
 The remainder of appellant's contentions require less discussion. He argues that the Administrator erroneously permitted Local 46 to relitigate the issue of liability at the second hearing and that he improperly relied on evidence from the United States Environmental Protection Agency and on the testimony of the general lather foreman. The gist of these complaints is that the Administrator erred under Title VII in receiving and considering evidence in the second hearing on whether Foreman had been laid off for good cause. But again, appellant has misconceived the nature of the Administrator's ruling and has assumed that evidentiary principles applicable to Title VII litigation in the court apply to the Administrator's hearings under the settlement agreement. For the reasons given above, this assumption is unfounded. Furthermore, the first hearing, contrary to appellant's assertion, did not establish that he had been discharged without cause. What was found was that the Union had been derelict in its duty to investigate his discharge. As the Administrator noted, the issue of good cause was not "quintessentially relevant" to the case; instead, the assertions of the employer that the layoff was for cause and the finding of the EPA that there had been no discriminatory discharge were considered as factors to be assessed in weighing the appropriate measure of damages. This approach was not unreasonable, was within the scope of the Administrator's power under the agreement, and affords no basis for reversal. For the same reasons, we reject appellant's other arguments.
 
 
 10
 The judgment of the district court is affirmed.
 
 
 
 *
 Of the District of Columbia Circuit, sitting by designation
 
 
 **
 Of the Eastern District of New York, sitting by designation
 
 
 [1]
 Local 46 has jurisdiction over, and refers workers to, two types of construction work performed in New York City and neighboring counties: metallic lathing and furring ("inside" work), and concrete reinforcing ("outside" work). See United States v. Wood, Wire & Metal Lathers International Union, Local No. 46, 471 F.2d 408, 410 (2d Cir. 1973)
 
 
 [2]
 The settlement agreement provided:
 The Administrator shall be empowered to take all actions, including the establishment of record-keeping requirements, as he deems necessary to implement the provisions of this Agreement, to ensure the performance of this Agreement and to remedy any breach thereof. The Administrator shall decide any questions or disputes or complaints arising under this Agreement, including questions of interpretation of the Agreement and claims of violations of this Agreement acting either on his own initiative or at the request of any interested person. All decisions of the Administrator shall be in writing and shall be final.
 
 
 [3]
 Permit holders are workers who pay dues to Local 46 for the privilege of using the union's hiring hall to obtain work referrals. They are not members of the union, have not been apprenticed, and perform only outside work. Wood, Wire & Metal Lathers, supra, 471 F.2d at 410
 
 
 [4]
 Hiring Hall Rule VII reads:
 No workmen shall be laid off until all workmen at his job performing the same class of work who commenced work subsequent to him have been laid off. Nothing in this paragraph shall derogate from the right of an employer to layoff workmen for cause. Any workman who challenges the basis of his layoff shall notify the Administrator in writing within three (3) days of such layoff, setting forth his reasons for regarding the layoff as improper. The workman shall simultaneously send copies to the Union and his employer.
 
 
 [5]
 Foreman's claim concerning the proper scope of the back pay award differs somewhat from the position he presented in the district court. Before us, he argues that he should be given back pay until the Union investigates his claim and attempts to persuade the employer to take less drastic action, or until he would have been laid off because of his position on the seniority list
 
 
 [6]
 For instance, the settlement agreement gives the Administrator power to decide all "questions or disputes or complaints arising under this Agreement" and provides that his decision shall be final. See note 2, supra
 
 
 [7]
 Appellant relies heavily on Alexander v. Gardner-Denver, supra, but that case is clearly distinguishable since the issue there was whether a prior arbitral decision barred a Title VII action. Yet, even in that situation, the Court recognized that "a court may properly accord (an arbitral decision) great weight." 415 U.S. at 60 n.21, 94 S.Ct. at 1025