John E. PATTERSON, et al., Plaintiffs,

v.

NEWSPAPER AND MAIL DELIVER-ERS' UNION OF NEW YORK AND VICINITY, et al., Defendants.

EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Plaintiff,

v.

NEWSPAPER AND MAIL DELIVER-ERS' UNION OF NEW YORK AND VICINITY, et al., Defendants.

In the Matter of the Application of John QUERIM, Thomas Farkas, Michael Mak, Peter Mak, Thomas Medora, Rudolph J. Rella, Rafael Rosado, John Toma, David Monk, Robert Sherman and Vincent Guglielmotti, to be placed on the Group I List of The New York Times pursuant to the terms of the Settlement Agreement, Patterson, et al., v. NMDU, et al., 73 Civ. 3058 (WCC) and 73 Civ. 4278 (WCC), U.S.D.C., S.D.N.Y.

Nos. 73 Civ. 3058 (WCC),
73 Civ. 4278 (WCC).
Claim No. 2550.

United States District Court,
S.D. New York.

June 24, 1991.

William S. Ellis, New York City, Interim Adm'r.

John Querim, pro se and for claimants Thomas Farkas, Michael Mak, Peter Mak, Thomas Medora, Rudolph Rella, Rafael Rosado and John Toma.

Vincent Guglielmotti, pro se.

Robert Sherman, pro se.

---

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

A class of private plaintiffs and the Equal Employment Opportunity Commission ("EEOC") brought two civil rights actions in 1973 against the Newspaper and Mail Deliverers' Union of New York and Vicinity ("NMDU" or "Union") and more than fifty publishers and news distributors within the Union's jurisdiction. Both suits charged that the Union, with the acquiescence of the publishers and distributors, had historically discriminated against minorities, and that the structure of the collective bargaining agreement, combined with nepotism and cronyism, had perpetuated the effects of past discrimination in violation of Title VII of the Civil Rights Act of 1964. Each lawsuit sought an affirmative action program designed to achieve for minorities the status they would have had in the newspaper delivery industry but for the alleged discriminatory practices.

On September 19, 1974, then-District Judge Lawrence W. Pierce issued an opinion and order approving a settlement between the parties and incorporating the Settlement Agreement in a Consent Decree, familiarity with which is presumed. *See Patterson v. Newspaper and Mail Deliverers' Union*, 384 F.Supp. 585 (S.D.N.Y. 1974) *aff'd*, 514 F.2d 767 (2d Cir.1975), *cert. denied*, 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976). The Settlement Agreement implements an affirmative action program which modifies the hiring procedures for newspaper deliverers under the industry-wide collective bargaining agreement. Under the consent decree, each employer maintains a work force of regular situation holders for its minimum delivery needs. To accommodate fluctuations in circulation, the publishers are permitted to supplement their work force with daily shapers.

The daily shapers are divided into three groups with descending hiring priorities. Those shapers on the Group I list have first priority, after the regular situation holders, in order of their shop seniority. The next priority belongs to Group II shapers. Group II consists of all persons holding regular situations or Group I positions with other employers in the industry. The last priority belongs to Group III shapers.

The Settlement Agreement also established an Administrator, appointed by the Court, to implement the provisions of the Consent Decree and to supervise its performance. The Settlement Agreement authorizes the Administrator to hear claims concerning violations of the Consent Decree. Appeals from his decisions are heard in this Court.

Pursuant to the Settlement Agreement, plaintiffs seek review of a determination by Administrator William S. Ellis, Esq. (the "Administrator"), denominated "Claim 255." I have reviewed the exhibits and testimony relied upon by the Administrator, as well as the arguments submitted to the Court by the various parties. For the reasons set forth below, the Administrator's decision is affirmed.

## BACKGROUND

The claim before the Court arises from the complaint of a number of individuals who shape and work at the New York Times (the "Times") as casuals concerning the failure of the Administrator to recommend them for placement on the Interim Group I list issued on November 20, 1988 and amended on March 16, 1990.[1]

---

1. In August 1985, the Administrator issued a preliminary Group III list of 202 employees. That list was challenged in Claim 186 by the NAACP Legal Defense Fund and the EEOC on the ground that it was in violation of the Settlement Agreement.

    In the fall of 1988, the Administrator applied to the court for permission to issue an Interim Group I list due to delays in the resolution of Claim 186. The Administrator estimated that approximately 86 places on Group I would have to be filled from Group III. The court granted the application by an order dated November 30, 1988 in Claim 229. An Interim Group I list was issued soon thereafter.

    In February 1990, the Interim Administrator issued his decision in Claim 186. It is now on appeal to this Court. Pursuant to his February 1990 decision, the Administrator reviewed the Interim Group I list, and issued a revised list on

Since the approval of the revised Interim Group I list two employees who were in the Armed Forces during the period prior to March 1990 were added to the bottom of the list and one employee, who had been on the original list and then on disability, was restored to the list. These three additions and the reasons for such actions were communicated to the court.

In May 1990, the plaintiffs herein applied to the Administrator to place them on the bottom of the Interim Group I list. The Administrator denied their request, and the plaintiffs appealed to this Court. On inquiry by the Court, the Administrator suggested that the applicants be granted a full hearing on their applications.

On August 17, 1990, the seven original applicants (John Querim, Thomas Farkas, Michael Mak, Peter Mak, Thomas Medora, Rudolph Rella, Rafael Rosado) along with David Monk, Robert Sherman, and Vincent Guglielmotti were granted a full hearing.[2] The evidence presented by the applicants revealed that of the ten men all were casual employees and three were minorities. After reviewing the complainants' shift records and upon comparison of those records with the records of minority and non-minority employees set forth on the schedules attached to the revised list dated March 16, 1990, the Administrator found no basis for giving these applicants preference over the minority and non-minority employers who had shaped for a number of years but still had not shaped sufficient shifts to warrant placement on the revised Interim Group I list.

The plaintiffs argue that since shaping effort is not noted at the Delivery Department, their shift records do not accurately reflect their true merit and steady efforts. Although such allegations were made before the Administrator and considered by

him, they failed to persuade the Administrator that such claimants deserved to be placed on the Interim Group I list.

The complainants raised before the Administrator a number of issues regarding alleged abuse of the Group II list and its impact on them. The Administrator found such arguments immaterial and irrelevant to their applications, concluding that his determination in Claim 255 did not turn on any act of the Group II employees, but rather on the comparison between the applicants and other employees more senior to them.

## DISCUSSION

■ The Agreement provides the Administrator with broad authority to take all actions he deems necessary to implement the provisions and to ensure the performance of the Order. It further provides that the Administrator shall hear and determine a wide variety of claims arising under the Agreement, which may then be brought before the Court for review. Agreement ¶ 4.

In *Foreman v. Wood, Wire & Metal Lathers International Union, Local No. 46*, 557 F.2d 988, 992 (2d Cir.1977), the Court of Appeals for the Second Circuit noted that the scope of review of an independent administrator appointed to ensure compliance with a settlement decree was similar to that applied to an arbitrator's decision. More recently in *United States v. International Brotherhood of Teamsters, etc.*, 905 F.2d 610, 616 (2d Cir.1990), the Second Circuit Court reiterated that an administrator's decision is "entitled to great deference." Thus, it is clear that an administrator's decision cannot be rejected merely because a court may be inclined to reach a different result.

March 16, 1990. This list estimated that under the S.A. regardless of the outcome in Claim 186, there were approximately 104 vacancies to be filled on Group I from Group III. This took into account 46 vacancies under Claim 222, 28 vacancies to replace employees made regular situation holders, and 24 vacancies due to retirement. The Court approved the revisions and an amended Interim Group I list was issued in March 1990.

**2.** It should be noted that John Toma did not appear in Claim 255. However, he did write to the Administrator about being placed on the Interim Group I list. The Administrator denied his application and sent him a copy of the second revised list. Since he has been included in plaintiffs' brief, this Court will consider his appeal together with the appeal of the original Claim 255 petitioners. Toma is the only plaintiff who has been on Group III.

■ Plaintiffs argue that the Administrator ignored abuses of Group II list workers which distorted the appellants' true effort and merit. The petitioners have suggested that the abuses arising from Group II are unknown to the Administrator and that they are the victims of such abuses.

In Claim 229, the Administrator asked the court to approve the creation of an Interim Group I list. One of the major reasons for such application was the increased use of Group II at the Times. The analysis set forth in Claim 229 and the background relating to the development and revision of the Interim Group I list reflect clearly the concern of the Administrator concerning possible abuses of Group II and represent an effort to rectify them. Plaintiffs claim that the Administrator's determination in Claim 255 represents a sudden, inexplicable failure to give weight to lost work opportunities caused by Group II abuses. While 1990 witnessed an extensive use of the Group II list at the Times and other companies, this Court concurs with the Administrator's assertion that such use, though extensive, does not amount to abuse. While the extensive use of the Group II list at the Times may have resulted in fewer shifts worked relative to the number of times plaintiffs shaped, such use does not warrant a reversal of the Administrator's decision. To reiterate the Administrator's determination in Claim 255, "[t]his finding does not turn on any act of the Group II employees, but rather on the comparison between the applicants and other employees who are senior to them."

In past cases, the Administrator has determined shop seniority for casual workers from the date on which the employee began a pattern of regular shaping. *See Administrator's Determination, Claim 165,* at 28–21 (decided Jan. 4, 1984). In view of the Settlement Agreement's emphasis on steady shaping, *see e.g.* ¶¶ 15 and 16, this is a valid basis for determining shop seniority for casual workers. The provisions applying to Group III lists, however, do not adopt seniority as the exclusive factor controlling an employee's status. For example, paragraph 15 of the Settlement Agreement provides that "preference for listing on an employer's Group III lists shall be given to those persons who are otherwise qualified and competent and who are (or who have been) employed by said employer … and who express an interest in and apply for Group III listing." Under paragraph 10(a), advancement from the Group III list to the Group I list shall be "on the basis of shop seniority (i.e., their Group III priority listing)." The two provisions mandate that seniority be considered, but do not prescribe that it be the sole criterion for advancement.

Plaintiffs complain that the Administrator failed to consider all the relevant factors in Claim 255, rendering his decision arbitrary and capricious. The Administrator, upon comparison of the shift records of the petitioners with those of the minority and non-minority employees set forth on the schedules attached to the revised list dated March 23, 1990, found no basis for giving petitioners preference over these other employees who had also failed to qualify for placement on the revised Group I list. This Court, upon consideration of the record and the briefs submitted, finds no basis for concluding that the Administrator's decision was arbitrary, as plaintiffs claim, or for substituting its judgment for that of the Administrator with regard to plaintiffs' petitions to be placed on the Interim Group I list.[3] The Administrator granted petitioners a full hearing on their applications and developed a full record below. His opinion was clearly within the scope of the Settlement Agreement. While it may be argued that the determination

---

**3.** D. Cipollo, number 50 on the Times list of non-minority employees, was the last non-minority Group III employee listed in Appendix B to the Revised Interim Group I list to have made it on to the Interim Group I list. *See* Record on Appeal at 14–17. John Toma, a plaintiff in this case, is number 63 on this list. Unlike the shift records of the 12 employees above him on the list, who also failed to qualify for placement on the Interim Group I list, Toma's record reflects a real effort to work in 1988 and 1989. Even so, I find the Administrator's construction of the Interim Group I list the result of a reasonable effort to draw necessary lines. That the Administrator drew such a line above Toma is not grounds for reversal.

does not represent the only set of conclusions which the evidence might have supported, I find the determination to be reasonable and not capricious, arbitrary, or manifestly unfair. In view of the steady shaping efforts of Messrs. Guglielmotti and Sherman, however, this Court concludes that they have earned the right to be placed on the Times Group III list.[4]

This Court finds no merit in plaintiffs' suggestion that due to delays in the Administrator's rendering of a determination in this claim, they were denied due process.

## CONCLUSION

This Court finds no abuse of discretion on the part of the Administrator in his determination of Claim 255. For the reasons set forth above the Administrator's decision is affirmed. The Administrator is directed to take action on behalf of Messrs. Sherman and Guglielmotti consistent with the views expressed in this opinion.

SO ORDERED.

---

[4]. Sherman worked 6 shifts in 1982, 5 shifts in 1983, 0 shifts in 1984 and 1985, 38 shifts in 1986, 91 shifts in 1987, 109 shifts in 1988, 122 shifts in 1989, and 60 shifts as of September 25, 1990. Mr. Guglielmotti worked 3 shifts in 1980, 6 shifts in 1981, 12 shifts in 1982, 6 shifts in 1983, 2 shifts in 1984, 9 shifts in 1985, 29 shifts in 1986, 52 shifts in 1987, 54 shifts in 1988, 62 shifts in 1989, and 35 shifts as of September 25, 1990. Although their records reflect shifts worked comparable to those of several non-minority Group III employees placed on the Interim Group I list, they were apparently not recommended for the list because of their status as casual employees. This Court finds such determination to be within the discretion of the Administrator and does not, therefore, disturb the Administrator's determination in Claim 255. In view of their records, however, this Court concludes that casual employees Robert Sherman and Vincent Guglielmotti have earned the right to be placed on the Times Group III list.