Thomas FARKAS, Michael Mak, Pete Mak, Thomas Medora, John Querim, Rafael Rosado and John Toma, Plaintiffs,

v.

William ELLIS, Defendant.

No. 91 Civ. 182 (WCC).

United States District Court,
S.D. New York.

Jan. 10, 1992.

Thomas Farkas, pro se.

Michael Mak, pro se.

Peter Mak, pro se.

Thomas Medora, pro se.

John Querim, pro se.

Rafael Rosado, pro se.

John Toma, pro se.

Grotta, Glassman & Hoffman, P.A., Roseland, N.J. (Jedd Mendelson, of counsel), for The New York Times.

William S. Ellis, pro se.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

A class of private plaintiffs and the Equal Employment Opportunity Commission ("EEOC") brought two civil rights actions in 1973 against the Newspaper and Mail Deliverers' Union of New York and Vicinity ("NMDU" or "Union") and more than fifty news publishers and distributors within the Union's jurisdiction. Both suits charged that the Union, with the acquiescence of the publishers and distributors, had historically discriminated against minorities, and that the structure of the collective bargaining agreement, combined with nepotism and cronyism, had perpetuated the effects of past discrimination in violation of Title VII of the Civil Rights Act of 1964. Each lawsuit sought an af-firmative action program designed to achieve for minorities the status they would have had in the newspaper delivery industry but for the alleged discriminatory practices.

On September 19, 1974, then-District Judge Lawrence W. Pierce issued an opinion and order approving a settlement between the parties and incorporating the Settlement Agreement in a Consent Decree, familiarity with which is presumed. *See Patterson v. Newspaper and Mail Deliverers' Union*, 384 F.Supp. 585 (S.D.N.Y. 1974) *aff'd*, 514 F.2d 767 (2d Cir.1975), *cert. denied*, 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976). The Consent Decree implements an affirmative action program which modifies the hiring procedures for newspaper deliverers under the industry-wide collective bargaining agreement. Under the Consent Decree, each employer maintains a work force of regular situation holders for its minimum delivery needs. To accommodate fluctuations in circulation, the publishers are permitted to supplement their work force with daily shapers.

The daily shapers are divided into three groups with descending hiring priorities. Those shapers on the Group I list have first priority, after the regular situation holders, in order of their shop seniority. The next priority belongs to Group II shapers. Group II consists of all persons holding regular situations or Group I positions with other employers in the industry. Last in order of priority are the Group III shapers.

The Consent Decree also established an Administrator, appointed by the Court, to implement the provisions of the Consent Decree and to supervise its performance. The Consent Decree authorizes the Administrator to hear claims concerning violations of the Decree. Appeals from his decisions are heard in this Court.

## BACKGROUND

This action is brought by seven plaintiffs who have previously asserted claims under the Consent Decree. Six of the plaintiffs were claimants in Claim No. 255, in which they requested to be placed on the Group I

list of the New York Times (the "Times"). After a hearing, Administrator Ellis concluded that they were not entitled to placement on that list. This Court affirmed the Administrator's Determination, *see Patterson v. Newspaper and Mail Deliverers' Union*, 765 F.Supp. 158 (S.D.N.Y.1991), and on December 31, 1991, the Second Circuit Court of Appeals affirmed the decision of this Court.

One of the plaintiffs, John Toma, is an individual whose rights were determined by the Administrator in Claim 186 and Claim 229. In September 1991, this Court affirmed the Determination in Claim 186. Toma was accorded an opportunity by the Administrator to present documents and argue for placement on the Group I list prior to the Administrator's revision of the Group I list in connection with his Determination of Claim 186 in March 1990. *See* Transcript of Hearing, dated January 17, 1991, at pp. 22–27; Answer at ¶ 6; Aff. of William Ellis, dated July 12, 1991, at ¶ 5. Prior to the Court's affirmance of Administrator Ellis' decision in Claim 255, Toma joined his claim with those of the Claim 255 claimants. *See Patterson*, 765 F.Supp. at 160 n. 2.

In the present action, plaintiffs seek the same relief they sought in Claim 255—to be placed on the Group I list of the Times. The Complaint names the Administrator as defendant and brings suit pursuant to the provisions of the Administrative Procedure Act (the "APA"), alleging violations of 5 U.S.C. §§ 702, 706(1), and 706(2)(A), (D), and (F). In August 1991, this Court denied plaintiffs' application for the recusal of Judge William C. Conner. 768 F.Supp. 476. At that time, the Court ordered plaintiffs to show cause why the Complaint should not be dismissed for want of subject matter jurisdiction.

Plaintiffs subsequently filed an Amended Complaint in which they add the Times as a defendant and assert jurisdiction under 29 U.S.C. § 185. At a conference held on October 8, 1991, this Court indicated that it would deem that document a motion for leave to amend the Complaint pursuant to Fed.R.Civ.P. Rule 15(a), in view of the fact that an answer has already been filed in the instant action and the Complaint may not be amended without leave of the Court.

The Court will address defendant's motion to dismiss the Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction as well as plaintiffs' motion to amend the Complaint pursuant to Fed. R.Civ.P. Rule 15(a) to add the Times as a party defendant.

### DISCUSSION

Plaintiffs originally brought this action against the Administrator pursuant to the provisions of the APA which provide for judicial review of agency action. In a prior Opinion and Order dated August 2, 1991, this Court held that these statutes were inapplicable to the present case and ordered plaintiffs to show cause why this suit should not be dismissed for want of subject matter jurisdiction. A hearing was held, and plaintiffs failed to come forth with any reasons why the matter should not be dismissed.

Sections 551(1) and 701(b)(1) of Title 5 of the United States Code state: 'agency' means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—

\*  \*  \*  \*  \*  \*

(B) the courts of the United States....

As this Court noted in its previous decision, Administrator Ellis is a person appointed by the court to oversee the affirmative action program established pursuant to the *Patterson* Consent Decree—he cannot logically be deemed an "agency" within 5 U.S.C. §§ 551(1) and 701(b)(1). Indeed, an Administrator appointed by the United States District Court may even be considered a "court" for purposes of the APA, and therefore expressly excluded from the definition of "agency." *Cf. United States v. Doherty*, 786 F.2d 491, 502 (2d Cir.1986) ("a Supreme Court justice, United States circuit and district judges, a duly authorized United States magistrate, or a judge of a state court of general jurisdiction—

cannot reasonably be deemed to constitute an 'agency' within 5 U.S.C. § 551(1)"). Thus, the Court concludes that plaintiffs' original Complaint against Administrator Ellis must be dismissed for failure to establish jurisdiction over the subject matter.

Plaintiffs seek to cure the Complaint's jurisdictional deficiencies in a proposed Amended Complaint which invokes the Court's jurisdiction under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and adds the New York Times as a party defendant. Leave to amend a complaint should be "freely given when justice so requires." Fed.R.Civ.P. Rule 15(a). However, such leave may be denied when the proposed amendment would be futile. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). A proposed amendment is futile if the amendment fails to state a claim for relief. *See Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1198–99 (2d Cir.1989).

Plaintiffs propose to add the Times as a party defendant pursuant to Fed.R.Civ.P. Rule 19(a)(1), on the grounds that, absent participation by the Times in this action, complete relief cannot be accorded among those already parties. Plaintiffs' theory for proceeding under § 301 of LMRA is that the Times violated § 4–A.2(g) of its collective bargaining agreement with the NMDU and the terms of the Consent Decree (*see* ¶ 25), by failing regularly to update its Group I and Group III lists and that the Administrator failed to "take all actions ... as he deems necessary to implement the provisions and ensure the performance of the Order," (Consent Decree at ¶ 4) by permitting the Times to neglect its duty to update the lists. Proposed Amended Complaint at ¶¶ 6–8.

■ Plaintiffs could have raised this argument before the Administrator. If they failed to do so in their proceedings before him on Claim 255, they may not do so now collaterally. Plaintiffs cite *Martin v.*

*Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), as support for the proposition that since they, as workers, were not original parties or privies to the *Patterson* action, they "are allowed to bring collateral suit against any decision pursuant to the *Patterson* Consent Decree that affects their hiring status under the Collective Bargaining Contract." Plaintiffs' Memo. In Opposition to Dismissal of the Complaint at 3. That case, however, is inapposite to the facts of the present action. In *Martin,* persons not parties to a Consent Decree challenged the Decree on the ground that it caused racial discrimination in their employment. The Supreme Court upheld respondents' right to bring the challenge since they had neither litigated nor participated in the initial proceeding. Unlike the respondents in *Martin,* plaintiffs in the instant action are not challenging the implementation of the Consent Decree. Indeed, plaintiffs have pursued their claims under that Agreement before Administrator Ellis, and a determination as to their rights was made. They cannot now bypass the affirmation of the Determination of the Administrator in Claim 255 by attempting to bring a new action in this Court under a different legal theory which seeks the same relief as was sought in Claim 255. That decision is *res judicata* as to them.

■ Even if plaintiffs were permitted to bring an action seeking the same relief that was sought in Claim 255, plaintiffs' Proposed Amended Complaint fails to state a viable cause of action under Section 301. Section 301 permits an individual to sue his employer and union for violation of a collective bargaining agreement.[1] In order to proceed against the Times under Section 301, the employee must "at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement." *Vaca v. Sipes,* 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842

---

1. As noted above, 29 U.S.C. § 185 permits an employee to bring suit against his employer and/or labor union for breach of the collective bargaining agreement in the event that the Union refuses to bring the claim. As Administrator under a Consent Decree, Mr. Ellis is clearly not a person governed by 29 U.S.C. § 185; thus, suit against him could not be maintained under this provision.

(1967); *see also Clayton v. International Union*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). In the instant case, a grievance procedure is contained in the collective bargaining agreement. Plaintiffs, as persons covered by the collective bargaining agreement,[2] were obligated to request that the NMDU argue before the Impartial Chairman that the labor contract had been violated. Plaintiffs cannot show that they attempted to proceed in this manner.[3]

Plaintiffs cannot avoid the consequences of this general rule by claiming that this case comes within one of several exceptions. The first involves a situation in which the conduct of the employer amounts to a repudiation of the contractual procedures so that the employer "is estopped by his own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action." *Vaca*, 386 U.S. at 185, 87 S.Ct. at 914. Plaintiffs' Proposed Amended Complaint does not allege that the Times took steps to frustrate the plaintiffs' processing of a complaint with the Union. In the absence of such an allegation, plaintiffs cannot rely upon this exception.

Similarly, plaintiffs cannot argue that the "futility" exception would operate to excuse their failure to exhaust the grievance procedures provided in the collective bargaining agreement. That defense has been successfully invoked where attempts to exhaust contractual grievance procedures have been made and have failed. *See, e.g., Glover v. St. Louis–San Francisco Railway*, 393 U.S. 324, 331, 89 S.Ct. 548, 551, 21 L.Ed.2d 519 (1969). Plaintiffs have not complained to the Union respecting an alleged violation by the Times of a provision of the collective bargaining agreement. "Consequently [plaintiffs have] not demonstrated that initiation of formal grievance procedures would be futile."

*D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1488 (7th Cir.1985).

Nor have plaintiffs alleged any facts which would indicate that the NMDU would breach its duty of fair representation if it determined not to process plaintiffs' claim against the Times for failure to revise the Group I list (assuming plaintiffs had made such a request). An indispensable predicate to a Section 301 action is a demonstration that the Union breached its duty of fair representation. *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 62, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981). To establish such a breach, the employee must prove that the union's conduct was arbitrary, discriminatory, or in bad faith. *See Vaca*, 386 U.S. at 190, 87 S.Ct. at 916. A showing of mere negligence or errors in judgment will not support a conclusion that the duty has been breached. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976).

Plaintiffs' argument that the NMDU favors over them the transferees from the New York Post, direct competitors for the Group I positions that plaintiffs seek, does not convince the Court that any refusal of the Union to process plaintiffs' complaint against the Times would be in breach of its duty of fair representation. *See* Proposed Amended Complaint at ¶ 11. The NMDU is forced to make difficult choices regarding which persons are to fill a finite number of positions on the Times Group I list. The settlement of Claim 266 which resulted in the transfer of 47 Post employees to the Times was a reasonable exercise of the NMDU's duty to resolve the competing claims of different groups of workers to those positions.

The NMDU has a duty to represent plaintiffs fairly; however, plaintiffs have pointed to no circumstances indicating that the Union has done otherwise. Advocacy by the Union on behalf of the Post trans-

---

**2.** Although none of the plaintiffs is a Union member, the parties agree that plaintiffs are encompassed within the bargaining unit.

**3.** In their brief, plaintiffs argue that they have attempted to exhaust the prescribed grievance procedures. However, none of the letters attached as exhibits to plaintiffs' brief asks the Union to proceed against the Times on the grounds that it has violated a specific provision of the labor contract.

ferees, even if to plaintiffs' detriment, does not mandate a conclusion that the Union breached its duty of fair representation. The Court concludes that plaintiffs' failure to attempt to exhaust the grievance procedures provided in the collective bargaining agreement would preclude this Section 301 claim, thus rendering futile any proposed amendment of the Complaint.

## CONCLUSION

For the foregoing reasons, the motion for leave to amend the Complaint is denied, and the Complaint is dismissed for lack of subject matter jurisdiction.

SO ORDERED.