John R. PATTERSON, et al., Plaintiffs,

v.

NEWSPAPER AND MAIL DELIVERERS' UNION OF NEW YORK AND VICINITY, et al., Defendants.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

NEWSPAPER AND MAIL DELIVERERS' UNION OF NEW YORK AND VICINITY, et al., Defendants.

In the Matter of the temporary transfer of the former regular situation holders and Group I employees of IMPERIAL NEWS COMPANY, now bankrupt, to other companies in the industry, pursuant to the terms of the Settlement Agreement, 73 Civ. 3058 (WCC) and 73 Civ. 4278 (WCC), U.S.D.C., S.D.N.Y.

Nos. 73 Civ. 3058 (WCC), 73 Civ. 4278 (WCC). Claim No. 277.

United States District Court, S.D. New York.

May 14, 1993.

Grotta, Glassman & Hoffman, P.A., New York City, for Imperial Delivery Service (Richard J. Delello and Mark J. Potel, of counsel).

Proskauer Rose Goetz & Mendelsohn, New York City, for City & Suburban Delivery Systems, a Div. of The New York Times Co. (Joseph Baumgarten, of counsel).

Proskauer Rose Goetz & Mendelsohn, New York City, for New D.N. Co. L.P., the new publisher of the Daily News (Kathleen M. McKenna, of counsel).

Sabin, Bermant & Gould, New York City, for Evening Journal Ass'n and for Newark Morning Ledger Co. (Sidney D. Kress, of counsel).

Hudson News Co., North Bergen, NJ, on behalf of Hudson County News Co. (Marshall E. Lippman, Gen. Counsel).

William S. Ellis, Interim Adm'r, Forsythe, Holbrook, Patton, Bovone, Seward & Ellis, New York City.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

In 1973 a class of private plaintiffs and the Equal Employment Opportunity Commission ("EEOC") brought two civil rights actions against the Newspaper and Mail Deliverers' Union of New York and Vicinity ("NMDU" or "Union") and more than fifty news publishers and distributors within the Union's jurisdiction. Both suits charged that the Union, with the acquiescence of the publishers and distributors, had historically discriminated against minorities, and that the structure of the collective bargaining agreement, combined with nepotism and cronyism, had perpetuated the effects of past discrimination in violation of Title VII of the Civil Rights Act of 1964. Each lawsuit sought an affirmative action program designed to achieve for minorities the status they would have had in the newspaper delivery industry but for the alleged discriminatory practices.

On September 19, 1974, then-District Judge Lawrence W. Pierce issued an Opinion and Order approving a settlement between the parties and incorporating the Settlement Agreement into a Consent Decree, familiari-

ty with which is presumed. *See Patterson v. Newspaper and Mail Deliverers' Union*, 384 F.Supp. 585 (S.D.N.Y.1974) *aff'd*, 514 F.2d 767 (2d Cir.1975), *cert. denied*, 427 U.S. 911, 96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976). The Settlement Agreement implements an affirmative action program which modifies the hiring procedures for newspaper deliverers under the industry-wide collective bargaining agreement, with the objective of attaining 25% minority employment. *See* Settlement Agreement at ¶ 7. Under the Consent Decree, each employer maintains a work force of regular situation holders for its minimum delivery needs. To accommodate fluctuations in circulation, the publishers are permitted to supplement their work force with daily shapers.

The daily shapers are divided into three groups with descending hiring priorities. Those shapers on the Group I list have first priority, after the regular situation holders, in order of their shop seniority. The next priority belongs to Group II shapers. Group II consists of all persons holding regular situations or Group I positions with other employers in the industry. Last in order of priority are the Group III shapers.

The Settlement Agreement also establishes an Administrator, appointed by the Court, to implement the provisions of the Consent Decree and supervise its performance. The Consent Decree authorizes the Administrator to hear claims concerning violations of the Decree. Appeals from his decisions are heard in this Court.

Its goals having been reached, the Consent Decree was vacated by a July 8, 1992, Opinion and Order of this Court. *See Patterson v. Newspaper and Mail Deliverers' Union*, 797 F.Supp. 1174 (S.D.N.Y.1992). However, the Administrator retained jurisdiction over all claims instituted under the Consent Decree before July 29, 1992.[1] Pursuant to this grant of authority, on January 29, 1993, Administrator William S. Ellis, Esq. (the "Administrator") issued an order in denominated "Claim 277" (the "Order"). In accord with the Settlement Agreement, defendants Evening Journal Assoc. (EJA), Hudson County News Co. (Hudson), Daily News (the News), Newark Morning Ledger Co. (NML), City & Suburban Delivery Systems (C & S), and Imperial Delivery Service, Inc. (IDS) seek review of this order. The Court has reviewed the memoranda submitted by the parties, and for the reasons set forth below, the Administrator's decision is vacated and remanded for an evidentiary hearing.

## BACKGROUND

In early 1991, Imperial News Co. (Imperial), a signatory to the *Patterson* Settlement Agreement, sold its assets to Magazine Distributors, Inc. (MDI). This transaction resulted in a number of NMDU-represented Imperial employees being laid off.[2] At present, there are two proceedings which might result in the placement of these workers. First Claim 274 is pending before the Administrator and will determine whether MDI is a successor in interest to Imperial and therefore a party to the Consent Decree. This claim has been adjourned at the request of the parties in an attempt to settle the matter. The Administrator's instant opinion predicts that any such settlement will make some provision for the former Imperial employees. Order at 5. The claim at bar is an attempt to transfer these workers under ¶ 18 of the consent decree which allows the reassignment of workers displaced by several types of corporate transactions.[3]

Since their termination, most of the former Imperial employees have been working off of Group II at the New York Times (the Times) through voluntary placement. In early 1993, the Times relocated and modernized its facilities and, as a result, employment off of

---

1. Our original opinion sustained the Administrator's jurisdiction over claims filed before July 8, 1992. *Id.* at 1185. However, upon reconsideration the cut-off date was extended to July 29, 1992. *See* Judgment of July 29, 1992.

2. We assume a familiarity with our prior decision in Claim 274 which describes the sale of Imperial's assets to MDI. *See Patterson v. News-*

*paper and Mail Deliverers' Union*, 791 F.Supp. 1015 (S.D.N.Y.1992).

3. There is also a related matter before the National Labor Relations Board (NLRB), but this affects only 4 of the 87 workers. *See* 797 F.Supp. at 1185.

Group II at the Times became no longer available. The Administrator responded by attempting to broker a voluntary agreement among several employers in the industry to accept these employees during the pendency of this claim. However, the Administrator's efforts were unsuccessful and an evidentiary hearing was scheduled to resolve the matter. Prior to the hearing, the Administrator issued the instant order temporarily placing the former Imperial employees with eleven employers in the industry. Appellants now seek to overturn the Administrator's order.

## DISCUSSION

The employers challenge both the Administrator's jurisdiction and the adequacy of the procedures below. We uphold the Administrator's jurisdiction to act under ¶ 18 of the Consent Decree, but find that he exceeded his discretion in ordering this relief without a hearing at which the employers might have presented evidence to support their position. Therefore, the order of the Administrator is vacated and remanded for an evidentiary hearing.

### I. The Administrator's Jurisdiction

There are two challenges made to the Administrator's jurisdiction. First, appellants claim the Administrator's power under ¶ 18 was limited by our termination of the Consent Decree. Second, one appellant claims that the Administrator lacks jurisdiction over it because the claim was not instituted against it before July 29, 1992. We disagree with both contentions.

#### A. The Administrator Retains Jurisdiction Over Claims Instituted before July 29, 1992.

■ Appellants argue that the Administrator had no jurisdiction under ¶ 18(a) of the Consent Decree to issue this transfer order because the order does not further the goal of the Consent Decree. Paragraph 18(a) provides:

[I]ndividuals who are employed by a defendant employer may .... be added to any other defendant employer's Group I list only if (a) they have lost their regular situation elsewhere in the industry by reason of lay-off, merger, consolidation or permanent suspension of the newspaper or company at which they were employed [and] (b) the Administrator has certified that such lay-off or merger, consolidation or permanent suspension is legitimate....

Appellants argue that this order can not be justified as furthering the affirmative action objective of the Consent Decree because this Court has held that the Decree's goal has been achieved. The employers support this contention by pointing out that the Administrator did not require that the transferred employees be "matched", and thus, the order does not advance minority representation in the industry. We reject appellants' argument because it is in conflict with our prior instructions to the Administrator.

The natural extension of appellants' argument is that since the Decree's affirmative action objective has been achieved, any order issued by the Administrator would be an abuse of discretion because it would not advance the Decree's goal. Nonetheless our order to vacate instructs the Administrator to hear and decide all pending claims in order to affect an orderly winding down of his office. Having charged the Administrator with the responsibility of disposing of these residual claims, we will not now eliminate his authority to do so.

The Consent Decree was designed to meet an affirmative action objective, but it also established procedures to balance this objective with the interests of employers, organized labor, and non-minority workers. The procedures established under ¶ 18 have governed certain aspects of the industry's operations for nearly two decades, and to avoid prejudicing those workers that acted in reliance on the these procedures, our order vacating the Decree underscored the Administrator's authority to dispose of the remaining claims in a manner which balances the equities of and minimizes the hardships to the parties involved. We have upheld transfers under ¶ 18 which were motivated by the Administrator's concerns to preserve the seniority of displaced workers despite the fact that the transfers did not further the affirmative action goal of the Decree. *Patterson v. Newspaper and Mail Deliverers' Union*, 1989 WL 74408 (S.D.N.Y.1989). Thus, our

vacation of the Consent Decree does not alter the Administrator's authority under ¶ 18 to resolve this claim.

Our decision is not affected by the Administrator's election not to match the non-minority workers transferred pursuant to his order. Paragraph 18(a) was designed to ensure the mobility of terminated regular situation holders without stripping their seniority. *Id.* at *2. To ensure that transfers made pursuant to paragraph 18(a) do not obstruct the goal of the Decree, the Decree requires that non-minority workers transferred to an employer's Group I list be matched by minority workers advanced from the employer's Group III list. The Administrator's order waives this matching requirement. However, given that the affirmative action objective of the Consent Decree has been met and since no party has suggested that the instant transfers be matched, we find no reason to alter the Administrator's order on this point. The unmatched transfer of employees under ¶ 18 is consistent with our order that the Administrator phase out his office in an orderly manner.

### B. The Administrator Retains Jurisdiction Over All Parties to the Consent Decree.

■ Our prior order grants the Administrator jurisdiction to decide all cases "instituted" before July 29, 1992. Although the instant claim was brought well before this date, appellant IDS argues that it was not notified that it might be affected by the claim until after the cut-off date. Thus, IDS contends that the claim was not "instituted" against it before July 29, 1992 and that the Administrator has no jurisdiction over IDS. We disagree.[4]

The Consent Decree governs a finite number of parties who voluntarily entered the agreement to dispose of a civil action brought against them. The agreement provides for instances when the supervising Administrator may transfer workers displaced by one party to the Group I list of another, and each employer was aware from the moment it became a party to the Decree that from time to time it might be required to add displaced workers to its Group I list. As negotiations to resolve a claim progress, the ever-changing business environment may require the Administrator to involve different sub-groups of employers. To require at the inception of a claim that the Administrator formally "institute" the claim against those employers who might be required to absorb displaced workers would be contrary to the existing practice before the Administrator and would jeopardize the Administrator's ability to use informal proceedings to settle claims among the parties. Therefore, to the extent that the Administrator retains jurisdiction over the residual claims made under the Consent Decree, his jurisdiction extends to all the parties to the Decree.[5]

### II. The Administrator Abused His Discretion by Granting Relief Without an Evidentiary Hearing.

■ Although the Administrator has jurisdiction to grant the type of relief specified in the challenged order, he abused his discretion in doing so without an evidentiary hearing. Appellants raise two issues of jurisdictional fact and two substantive considerations on which they must be heard before a transfer order may be issued.

### A. Issues of Jurisdictional Fact to be Determined on Remand.

The Administrator has no jurisdiction under ¶ 18 to transfer workers discharged because of a labor dispute. *Patterson v. News-*

---

4. Appellant NML makes a similar assertion that the Administrator has no jurisdiction over it because it did not employ drivers at the time this claim arose. We find no support for this contention.

5. Appellants also argue that this claim is not ripe for disposition until after Claim 274 is resolved. The issue in Claim 274 is whether MDI has any obligation to former Imperial workers under the Consent Decree. We agree with appellants that it seems more logical to determine whether these

former Imperial employees were properly discharged pursuant to the Imperial/MDI transaction before transferring the employees to other employers pursuant to ¶ 18 of the Decree. However, we do not believe that the pendency of Claim 274 presents a justiciability bar to the Administrator's resolution of this claim. The Administrator has extensive experience with the parties and the industry, and therefore, we leave the order in which the remaining claims are resolved to his sound discretion.

*paper and Mail Deliverers' Union,* 1979 WL 2013 (S.D.N.Y.1979). Several parties contend that the pendency of Claim 274 and the matter before the NLRB compel a finding that the Imperial/MDI asset sale was the result of labor strife. Although we question this contention in light of the Administrator's significant findings that the transaction was driven by economic factors, *see* 797 F.Supp. at 1184, we also feel that those advocating the alternative position should be given an opportunity to present evidence on the matter.

In addition, appellants IDS and C & S claim that they are not parties to the Consent Decree and therefore not subject to the Administrator's order. Although the order states that both employers are parties to the Consent Decree, (Order at 8), the parties did not have the opportunity to present evidence to the Administrator before these findings were made. Thus, the case is remanded to the Administrator for a hearing on this issue as well.[6]

*B. Substantive Issues to be Considered on Remand.*

Various employers object to the Administrator's order because it conflicts with their collective bargaining agreements. Specifically, IDS and C & S argue that pursuant to

their agreement with the Union they have complete hiring freedom and are no longer bound by the Group I hiring structure.[7] These employers argue that the NMDU and the employees it represents should not be permitted to sidestep their collective bargaining concessions through the Consent Decree's claim procedure.[8] A collective bargaining agreement can not eliminate an employer's responsibilities under the Consent Decree; however, these factors may be relevant to the Administrator's exercise of discretion. Thus, the employers should be given the opportunity to make these arguments before the Administrator at an evidentiary hearing.

Similarly, IDS argues that the Administrator's order creates a pro-union hiring bias in violation of the National Labor Relations Act. Although the Administrator has found this consideration dispositive in another case, *see Patterson v. Newspaper and Mail Deliverers' Union,* 1979 WL 2013, *1 (S.D.N.Y.1979), his instant order does not address the issue. Thus, it too should be considered on remand.

### CONCLUSION

The Administrator's jurisdiction over the claim and the parties involved in this claim is

---

6. Appellants IDS and C & S argue that even if they would ordinarily be considered parties to the Consent Decree by successorship, the scope of the Consent Decree should not be so expanded because it has been terminated. *See Waker v. Republic Steel Corp.,* 45 Fair Empl. Prac. Cases (BNA) 303, 1987 WL 109068 (N.D.Ala.1987) (despite the presence of factors that ordinarily support a finding of successorship, defendant not a successor because decree was subject to dissolution). However, the procedural posture of this case differs from that of *Waker.* The decision in *Waker* was pursuant to a summary judgment motion, and the court exercised its broad discretion over the interpretation of consent decrees. By contrast, we sit only to review the Administrator's decisions to which we give a high level of deference. *Foreman v. Wood, Wire & Metal Lathers International Union, Local No. 46,* 557 F.2d 988, 992 (2d Cir.1977); *United States v. International Brotherhood of Teamsters,* 905 F.2d 610, 616 (2d Cir.1990). On remand, the parties may present arguments based on *Waker* to the Administrator and his decision may be influenced thereby. However, *Waker* does not legally constrain the Administrator's discretion.

7. Although the News still maintains and promotes from a Group I list, it also claims that the Union's right to transfer workers to its Group I list has been limited by their collective bargaining agreement.

8. Appellant Hudson asserts that at the time the Consent Decree was signed the Union had the collective bargaining right to place its laid off members with other employers in the industry. Hudson claims that ¶ 18 of the Decree was designed to limit this right so that it would not interfere with the goal of the Decree. Hudson argues that the Union subsequently lost its collective bargaining right to transfer laid off workers and seeks to regain it through ¶ 18 of the Consent Decree. However, the language of ¶ 18 grants the Administrator the affirmative power to transfer laid off workers. If this power is inconsistent with the collective bargaining climate in the industry, the parties may move to amend the Decree. However, such an amendment would require extensive proceedings and may not be made via Hudson's two-page letter brief. In addition, given that the Consent Decree has been vacated, it is likely that the cost associated with amending it can not be justified.

upheld. However, claim 277 is remanded to the Administrator for an evidentiary hearing.

**SO ORDERED.**